UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SHIVA STEIN, <br><br> Plaintiff, <br><br> v. <br><br> CELGENE CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

## NATURE OF THE ACTION

1. This is a stockholder's direct action under Section 14(a) of the Securities Exchange Act of 1934, as amended (the Exchange Act), 15 U.S.C. § 78n(a), and the rules and regulations of the United States Securities and Exchange Commission (the SEC).

2. Plaintiff, a shareholder in Defendant Celgene Corporation, seeks an injunction to prevent a vote by its shareholders on Management Proposal 3 in the 2017 Proxy Statement for the annual meeting of Celgene shareholders scheduled for June 14, 2017. The grounds for this injunction are Defendant's failures to comply with the SEC's disclosure requirements for proxy statements.

3. Management Proposal 3 requests that the shareholders approve an amendment and restatement of the 2008 Stock Incentive Plan ("Restated 2008 Plan"), which proposes to allow Celgene to award 275,263,282 shares to participants in the plan. But it is unclear how

many participants are in the plan and why they are receiving these awards.  SEC Rule 14a-3(a), 17 C.F.R. § 240.14a-3, requires that public companies may not solicit shareholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A," 17 C.F.R. § 240.14a-101.  Item 10(a)(1) of Schedule 14A specifically requires that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed," the proxy statement soliciting this vote must "[d]escribe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."

4. Proposal 3 of the 2017 Proxy Statement fails to disclose the classes of eligible participants, their approximate number, and the basis of their participation in the 2017 Equity Incentive Plan.  Thus, the 2017 Proxy Statement does not comply with the SEC rules and regulations, and the Court should enjoin that vote unless and until Defendant furnishes its shareholders with a supplemental proxy statement with those specific disclosures.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

6. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

7. Venue is proper in this district because, as allowed under Section 27(a) of the Exchange Act, this district is where the violation at issue in this case occurred because the Plaintiff is a resident of this district.

## PARTIES

8. Plaintiff is, and has been continuously since June 2014, a holder of Celgene common stock.

9. Celgene is a corporation organized under the laws of the State of Delaware. The Company's last fiscal year ended December 31, 2016. As of April 20, 2017, it had 780,824,335 shares of common stock outstanding. Celgene's common stock is traded on the NASDAQ under the symbol CELG. Celgene is a global biopharmaceutical company.

## WRONGFUL ACTS AND OMISSIONS

10. Celgene has scheduled the annual shareholders' meeting for June 14, 2017. On April 27, 2017, it furnished its shareholders with the 2017 Proxy Statement to solicit their proxies for five management proposals, one shareholder proposal (if properly presented), and to transact other business that may properly come before the annual meeting.

11. Management Proposal 3 requests that the shareholders approve the Restated 2008 Plan, including 10,000,000 newly authorized shares of Common Stock, which Celgene will be able to grant to participants in the plan immediately after the stockholder vote. But this proposal fails to provide sufficient – and federally required – information for Celgene stockholders to understand how many participants there are in the plan or why they are eligible for such shares.

12. Because Management Proposal 3 concerns a stockholder vote on a compensation plan, the SEC's rules and regulations require the 2017 Proxy Statement to disclose certain information concerning the 2008 Restated Plan. Specifically, Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101 states:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> (a) Plans subject to security holder action.
>
> (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

But the 2017 Proxy Statement omits these disclosures.

13. Instead of providing the "approximate number of persons in each such class, and … the basis of such participation," Management Proposal 3 only tells stockholders the following about who will receive these awards:

> *Purpose; Eligibility.* The purpose of the Restated Plan is to enable us and our affiliates to attract, retain and motivate employees and non-employee directors who are important to our success and growth, and to strengthen the mutuality of interests between such individuals and our stockholders by granting such individuals stock-based incentives and other equity interests in us.

14. Nowhere in the 2017 Proxy Statement does Celgene disclose the number of "employees and non-employee directors" of Celgene or its "affiliates." Indeed, according to the Restated Plan § 2.2, which is annexed to the 2017 Proxy Statement, the definition of "affiliates" is very broad:

> 2.2 "Affiliate" shall mean other than the Company, (i) any Subsidiary, (ii) any corporation in an unbroken chain of corporations ending with the Company which owns stock possessing 50% or more of the total combined voting power of all classes of stock in one of the other corporations in such chain, (iii) any corporation, trade or business (including, without limitation, a partnership or limited liability company) which is controlled 50% or more (whether by ownership of stock, assets or an equivalent ownership interest or voting interest) by the Company or one of its Affiliates, or (iv) any other entity, approved by the Committee as an Affiliate under the Plan, in which the Company or any of its Affiliates has a material equity interest and which is designated as an "Affiliate" by resolution of the Committee; provided that the Common Stock subject to any Award constitutes "service recipient stock" for purposes of Section 409A of the Code or otherwise does not subject the Award to Section 409A of the Code.

15.     Thus, it is entirely unclear from the 2017 Proxy Statement how many participants will be awarded the 10,000,000 newly authorized shares of Common Stock that stockholders are being asked to approve or the basis of their receipt of such awards.

16.     This contravention of the SEC rules renders the 2017 Proxy Statement unlawful under § 14(a) of the Exchange Act.

17.     Moreover, while the description of the Restated Plan in Proposal 3 appears to allow for compensation to be paid to the "non-employee directors" of "affiliates" – ("***The purpose of the Restated Plan is to enable*** us and ***our affiliates to attract, retain and motivate*** employees and ***non-employee directors***") the Restated Plan itself does not appear to allow *affiliates*' non-employee directors to participate in the plan according to §§ 2.23, 2.20, and 2.10 of the Restated 2008 Plan:

> 2.23   "Participant" shall mean an Eligible Employee or Non-Employee Director to whom an Award has been made pursuant to this Plan.
>
> 2.20   "Non-Employee Director" shall mean a director of the Company who is not an active employee of the Company or an Affiliate.
>
> 2.10   "Company" shall mean Celgene Corporation, a Delaware corporation, and its successors by merger, consolidation or otherwise.

18.     Thus, the description of the purpose of the Restated Plan is also confusing.

19.     As stated above, the Restated 2008 Plan will allow for 10,000,000 newly authorized shares of Common Stock to be awarded immediately after the stockholder vote.  Two years ago, stockholders provided an additional 17,500,000 new shares under the 2008 Plan.  This increased the number of shares available for awards at Celgene to approximately 53,334,888.  According to the 2017 Proxy Statement, only 38,076,986 now remain for awards.  As such, the Company has awarded over 15,200,000 shares in the last two years.

20. All of the 10,000,000 newly-awarded shares will be available for awards that immediately vest because although there is a requirement that only 5% of the Restated 2008 Plan share reserve will be available for awards that immediately vest, the share reserve will be 275,263,282 if stockholders approve the 2008 Restatement Plan. Five percent of 275,263,282 is 13,763,164.1 so all 10 million new shares can be immediately awarded and also immediately vest.

21. The preceding paragraphs state a direct claim for relief against Celgene under § 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

22. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law. She will suffer irreparable harm on Management Proposal 3 if no action is taken to ameliorate this harm because, in addition to being forced to vote without this information, the 2008 Restated Plan allows for over 10 million new shares to be granted to an unknown number of "employees and non-employee directors" of Celgene or its "affiliates" immediately after this vote and then immediately vest. Unwinding these awards will be impossible. Moreover, it is not clear whether the "non-employee directors" of Celgene's affiliates are, in fact, eligible for awards under the Plan because the language in the Plan contradicts the statements in the proposal.

23. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by Item 10(a)(1) of Schedule 14A with regard to Proposal 3.

24. Consequently, Celgene should be enjoined from presenting Proposal 3 for a stockholder vote at the June 14, 2017 annual meeting or certifying or otherwise accepting any

vote cast, by proxy or in person, by or on behalf of any Celgene shareholder in connection with Proposal 3 in the 2017 Proxy Statement.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests the following relief:

    A.    A preliminary and permanent injunction, enjoining Celgene from

        (i)    certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Celgene shareholder in connection with Proposal 3 in the 2017 Proxy Statement;

        (ii)    presenting Proposal 3 for a shareholder vote at the June 14, 2017 annual meeting;

    B.    A preliminary and permanent injunction requiring Celgene to furnish a supplemental proxy statement with the information required by 17 C.F.R. §240.14a-101, Item 10(a)(1).

    C.    Otherwise proceeding at its June 14, 2017 annual shareholders meeting or at any other time in a manner inconsistent with Item 10(a)(1).

    D.    Awarding such other and further relief as this Court deems just and proper.

**BARRACK, RODOS & BACINE**

By: /s/ A. Arnold Gershon
A. Arnold Gershon
Michael A. Toomey
Eleven Times Square
640 8th Ave., 10th Floor 10036
New York, NY 10022
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Attorneys for Plaintiff*